Cook *v.* Steuben Co. Bank.

## Cook *et al. v.* Steuben Co. Bank.

A motion in a case is no part of the record, unless made so by bill of excep-
tions.

When the district court rejects a plea in abatement, and the defendants take no
exception to the ruling of the court, but file a different plea, and upon it appar-
ently rest their defence; it will be presumed that the plea in abatement was
waived, or the objection to the ruling of the court abandoned.

A plea of *nul tiel* corporation, should be in substance a plea in abatement, as it
attacks the disability or non-existence of the plaintiff.

A judgment rendered for a party in another state, is conclusive as to the exist-
ence of such party at the rendition of the judgment.

### Error, *to Scott District Court.*

This was an action of debt against Eb. and Wm. L.
Cook, on a judgment record from the supreme court of the
state of New York.

The proceedings below were at the September term, 1844,
and are sufficiently disclosed by the arguments of counsel
and the opinion of the court.

*G. C. R. Mitchell*, for the plaintiffs in error, submitted the following arguments in writing, filed January, 1846. This was an action of debt, on the transcript of a judgment of a court in the state of New York, by the bank against plaintiffs in error. A *capias ad respondendum* was issued by the clerk of the district court of Scott county, Iowa, on an affidavit made by the cashier of the bank before a certain Wm. Hamilton, who states that he is clerk of the circuit court of 6th circuit, &c. Plaintiffs in error were arrested, and gave bail to the sheriff. At the return of the writ they moved the court to vacate the bail bond, for reasons which appear in the record, to wit, insufficiency of affidavit. The overruling this motion, and striking plea in abatement from the file by the district court, are the first two errors assigned. Defendants object to this court noticing these assignments, on the ground that neither the affidavit, capias, motion to vacate, or orders of court overruling the motion and striking plea from files, is a part of the record; and this court cannot notice or regard them, although they are all copied into the transcripts as a part of the record by the clerk. 1 Blackford, 86, is referred to. In that case the first error assigned is overruling a motion to dismiss the writ. The court say they cannot notice it, because the writ is no part of the record, but no authorities are referred to. The same book, pages 347 and 429, is also referred to. On p. 347, the court decide that a plea rejected on motion, is no part of record, unless made so by bill of exceptions; and on p. 429, that a judgment overruling motion to quash writ, or rejecting a plea in abatement, is no part of record. For this strange doctrine, not a single authority is referred to by the court. See 7 Wheaton, 530. That the writ in England is not technically a part of the record, is admitted. There it is considered of so little consequence, that it is not even necessary that an original should be returned, if the defendant enters his appearance; and it is undeniable that the court of king's bench obtained its entire civil jurisdiction by a fiction, defendant being first arrested upon a writ implying a tres-

Cook *v.* Steuben Co. Bank.

pass, and the plaintiff then declaring in debt or assumpsit, &c., and no advantage could be taken of the variance between the writ and narration. But in the United States a plea in abatement lies to such variance. See Story's Pleadings, for precedents as to such pleas. No such precedent, however, is to be found in an English book. For plaintiff, it is insisted that, however it may be considered in England, in this country the affidavit to hold to bail, and the writ, are both parts of the record, and that this court is bound to notice them, and if upon such examination any error is shown to have been committed in the court below, to reverse. In support of this position, and as to the plea in abatement, see 1 Stewart, 70 ; in that case one of defendant's pleas was stricken out as frivolous, without any bill of exceptions : this was assigned for error. The supreme court examined the plea, and reversed the judgment below.

Same book, 149, the error assigned was that no writ or notice was served on defendant below. The court say the transcript shows an affidavit to hold to bail, and a bail bond given by defendant below, and therefore they arrive at the conclusion that a writ was issued and served, and affirmed the judgment below. See same book, 171.

That the capias is part of the record, see *Barton* v. *Petit*, 7 Cranch, 200. The clerk, in the transcript sent up, not having inserted the *capias ad respondendum*, defendant in error suggested the omission of the writ as diminution. The court awarded a certiorari ; as a return to which, the clerk sent up a copy of the writ, and the marshal's return, and the supreme court of the United States examined them, which shows conclusively that the court considered them part of the record, and that they were bound to notice them, although it was stated by counsel, that in the Virginia practice, the writ was not considered part of the record.

If not technically part of the record, it is a part of the proceedings in the cause, and the appellate court is bound to notice it. As to the plea in abatement, there can be no question that it is properly a part of the record. If the pleadings

29

in a case do not constitute a part of the record, I know not of what a record can be composed. In *Hays* v. *McKee*, 2 Blackf. 11, the court say neither the writ nor return are part of the record; in note 2, page 12, reference is made to 4 Rand, 413, where the court decide, " In cases of judgments by default for want of appearance, the writ with the endorsement is a necessary part of the record." Then the writ and endorsement are part of the record of a suit, until the defendant enters his appearance, but instantly on his appearance, (according to the Indiana decisions,) by some magic their existence, as part of the record, is annihilated. This is a logic that I confess I cannot understand, and I think this court will hesitate long before it adopts it, in opposition to the practice of the supreme court of the United States. That the affidavit to hold to bail is as much a part of the record as the writ, cannot, I think, be successfully controverted. It is the foundation of the whole proceedings, that which alone authorizes the capias, and is a component part of the process to bring a party into court. See *Lewis* v. *Brackenridge*, 1 Blackf. 115, where the court say, " The affidavit to hold to bail is a component part of the process, &c.," and in 7 Durnfd. and East. 372, the court say, " but the affidavit to hold to bail is only process to bring the party in." The above authorities I think abundantly show, that not only American authority and practice, but justice and sound common sense, unite in support of the position, that the affidavit, writ, and return, and plea in abatement, are parts of the record and *proceedings* in the case, at least so far that this court can and is bound to notice them, and that our errors are well assigned. But defendant says our objection came too late, that after appearance it is too late to object to irregularity in process. This court has, during the present term, decided that appearance does *not* cure defects or irregularity in the process, and for further authority on this point, see 5 Durnfd. and East. 254; 7 ib. 372.

The bail bond in this case ought to be vacated, because there is no sufficient affidavit. The affidavit was made in

New York before a clerk. This court cannot officially know that he was clerk. If it was a judicial proceeding, which I contend it was, it has not been certified and authenticated in the manner prescribed by Congress. If it was not a judicial proceeding, where does the clerk derive his authority to administer the oath? Not from any statute of Iowa! The district court could not know that he was authorized, even by the laws of New York, to administer oaths, and the supplementary affidavits and depositions which defendant in error has taken since and procured to be brought here by certiorari, cannot mend the defect. In the first place, they are clearly no part of the record, and in the second, supplementary affidavits are never received to supply defects in the affidavit to hold to bail, 20 John. 337. The affidavit, at the time it is filed, must be perfect and sufficient. 1 Blackf. 115. The court say, "No supplementary or counter affidavits are admissible, nor any other evidence as to the merits than that produced to the clerk." The naked point for the court to decide, is therefore; is an affidavit made in New York, before and authenticated by the clerk of a circuit court there, alone sufficient to authorize holding to bail in Iowa?

In addition to the reasons above assigned, I would say, that our statute is peculiar, it requires more to be sworn to, to hold to bail, than is required in England; there, affiant only swears to the debt,—here, he must not only swear that there is a debt due, and as near as he can the amount, but he must also swear that he verily believes defendant is about to do certain acts, specified in our statute, to his prejudice. To hold to bail here, it was not sufficient that a debt was due. Now, if an affidavit like the one in this case should be held sufficient, what security have our citizens against perjury? Although there may not be one syllable of truth in the affidavit made abroad, the affiant cannot be convicted of perjury. Surely it never could have been the intention of our legislature to subject our citizens to this hazard. It must have intended that the affidavit should be made before some person authorized by itself to administer oaths. The authorities

Cook *v.* Steuben Co. Bank.

referred to by defendant, as to receiving affidavits made abroad to hold to bail, do not apply to this case, because in the cases referred to, affiant was only required to swear to the debt, which a stranger, one thousand miles distant, could as well swear to as a man on the spot where the process issued ; but the affiant, by our statute, had to swear to facts which a stranger could not be supposed to know. The affidavit in this case, I insist, does not cover all the requisites of our statutes. There were two in force at the time the writ issued in this case. One (*Rev. Stat.* p. 92, § 1,) requires affidavit to state, 1st. indebtedness, and also one of two other facts. The other (*Rev. Stat.* p. 235, § 1,) requires a statement of other facts. These two statutes, I insist, were cumulative, and the affidavit in this case only contains the affirmation of indebtedness required by the first statute, and the statement required by the second ; and I insist that it should also have contained either the second or third requisite prescribed in the 1st section of the first act. The provisions of the two acts are not conflicting, and as the last does not repeal the first, both are in force.

The court below erred in striking out the plea in abatement. I insist that under our statute the plea is good. The proceedings under our statutes in relation to bail were as much a departure from the course of the common law as are the proceedings in attachments. The affidavit to hold to bail contains almost the very same allegations as that for the attachment, and the conditions of the bail bond and the bond for replevying property attached, are substantially the same. I can see no good reason, therefore, why a plea in abatement can be pleaded, as is the constant practice to the affidavit for an attachment, and not to the affidavit to hold to bail. The reasons for allowing the plea in the attachment case are, 1st, that the proceeding is a creature of statute, and that the facts sworn to must exist, not that they are sworn to, to warrant the issuance of the attachment. Now our proceeding to hold to bail is as much a creature of statute as the attachment. And it is just as requisite by

the statute that the facts should exist that are sworn to, to authorize the capias as the attachment. The plea, therefore, I conclude, ought not to have been stricken out; it was a good plea.

Another error assigned is the sustaining the demurrer to the plea of *nul tiel corporation.* The ground upon which the court below proceeded in sustaining the demurrer was, that upon the trial on the merits the bank would be bound to prove its corporate existence and capacity to sue, and that the plea of *nul tiel corporation,* therefore, amounted to the general issue; and several New York cases were referred to as authorities. I think there will be no difficulty in satisfying this court that the district court erred in following those authorities and applying them to this case.

On the part of plaintiff in error, it is insisted that the correct doctrine is, that where a corporation sues and defendant wishes to contest the existence of the corporation or its capacity to sue, he must plead specially in abatement or bar, Sec. 1st, Saunders's R. 340, note 2; in which, after stating several cases, it is laid down that " the defendant can only plead *nul tiel corporation* in *bar* to an action by a corporation." See also *Proprietor's Kennebec Purchase* v. *Call,* 1 Mass. 482–484; *Couard* v. *Atlantic Insur. Co.* 1 Peters, 386–450; 18 John, 137, where the court say *nul tiel corporation* is a good plea in *bar.* See 5 Ohio, 286: the court say, " If the defendant intended to object to the want of capacity in plaintiff to sue, he should have pleaded that matter specially in abatement or bar. He has pleaded the general issue. This admits the capacity of plaintiffs to sue in the corporate character they have described for themselves." This is a case directly in point. If defendant below had pleaded the general issue, or any other plea and not *nul tiel corporation,* it would have been an admission of the corporate existence of the bank and its right to sue. But there is a decision in our favor on this point in the highest court in the country; *Society for the Propagation, &c.* v. *The Town of Pawlet,* 4 Peters, 500, where in considering this very point the court say,

"The general issue is pleaded, which admits the competency of the plaintiffs to sue in the corporate capacity in which they have sued. If the defendants meant to have insisted upon the want of a corporate capacity in plaintiffs to sue, it should have been insisted upon by *special plea* in *abatement or bar,* &c." . . These authorities, it seems to me, are decisive of this point. But independently of these direct decisions upon the general principles and analogies of special pleading, the court below erred, unquestionably. ·The decision is placed on the ground, and so are all the authorities cited by the bank, that the plea of *nul tiel corporation* denies a fact which the bank is bound to prove on the general issue, and that, therefore, the plea amounts to the general issue. That the bank would *not* be bound to prove its corporate existence on such an issue, the authorities I have above referred to conclusively establish. But the court below and the counsel for the bank seem to have forgotten that in this case there is no general issue, and consequently, if the ground they assumed was correct, it has no application to this case. We could have pleaded no plea other than the one we did plead, which would have required proof of the corporate existence of the bank. This is an action of debt on a record; *nil debet,* which is the general issue in action of debt, would not have been a good plea in this action. *Nul tiel record* only puts in issue the existence of the record; therefore, as *nul tiel corporation* does *not* in this case amount to the general issue, because there is no general issue, the only reason for the decision of the court below fails, and this court must decide that the district court erred in sustaining the demurrer.

If the plea of *nul tiel corporation* had been bad, however, the authorities cited by plaintiff below show that it is only bad on *special* demurrer. That is the only way of taking advantage of it. The court will see that the demurrer in this case is general. We, therefore, conclude that all the errors we have assigned are well assigned, and

that the judgment of the court below must upon all of them be reversed.

Defendant in error objects that the plea is bad, however, in this particular case, on another ground. That this suit was brought on a judgment that we might have pleaded *nul tiel corporation* in the original suit; and not having done so, we cannot now go behind the judgment and plead anything we might have pleaded in the original suit. Our plea shows that we attempt no such thing. It does not deny the corporate existence of the bank at the commencement of the first suit, but only at the commencement of this suit in Iowa. All pleas refer to the commencement of the suit in which they are pleaded, and in this case expressly. Now, if the charter of this bank had expired before the commencement of this suit in district court, and contained no provisions for collecting its debts or instituting or prosecuting suits, therefore, after such expiration, it would not have had such corporate existence as to have been able to bring this suit; and the proper plea for defendant below, to avail himself of such a state of facts, was by this very plea of *nul tiel corporation* pleaded in *bar*, and he could avail himself of it in no other way. Or suppose this charter had been adjudged by the proper court of New York forfeited, and persons appointed legally to wind up its affairs, collect its dues, and pay its debts, those persons would have been the only persons who could sue on the judgment, and not a bank whose corporate existence had ended. Suppose such to be the case in this instance. If the court affirm the judgment below on this point, and the money is collected from plaintiffs in error, some time hence those persons appointed to wind up the affairs of this bank may sue us upon this same judgment of the New York court, and recover the amount again of us; for the judgment in this case, in the name of a corporation which was out of existence, would be no bar to such suit. This proposition is undeniable. If this bank was not legally in existence, if its charter had expired in any way or had been declared

by a competent court forfeited, before the commencement of this suit in the Scott County district court; then the bank had no such corporate existence as to be competent to sue, and the authorities above cited show that this want of corporate existence or capacity to sue, could only be taken advantage of by the plea of *nul tiel corporation.*

*James Grant,* for the defendant, submitted the following argument before his election to the office of district judge.

Before the court examines the first and second error relied on, I wish to make this preliminary objection; that the causes of error therein set forth are no part of the record, not having been made so by bill of exceptions: and on these points I refer the court to the following authorities:

" The judgment of a circuit court overruling a motion to quash the writ, or reject a plea in abatement, is no part of the record, unless made so by bill of exceptions." *Hinton* v. *Brown,* 1 Blackf. 429.

" A plea rejected on motion is no part of the record, unless made so by bill of exceptions." *Henderson* v. *Reed,* 1 Blackf. 347.

" The *capias ad respondendum* is no part of the record, unless made so in some legitimate way." *Shields* v. *Cunningham,* 1 Blackf. 86.

" The circumstance of its being spread before us by the clerk, can add nothing to its validity." Same case, p. 86.

" Neither the *capias ad respondendum,* nor the sheriff's return on it, can be noticed by this court, unless made a part of the record in some way known to the law." *Hays* v. *McKee,* 2 Blackf. 11.

" Neither an affidavit for continuance, nor any objection of a party to the ordering a cause for trial, is any part of the record, unless made so by bill of exceptions." *Wilson* v. *Coles,* 2 Blackf. 402.

" The dismission of a cause," (or any other act of court in a cause,) " without any reason for or against it, is presumed to be correct." *Ross* v. *Miner,* 3 Blackf. 362.

" A bill of exceptions relative to the affidavit and bond in this case stated, " which affidavit and bond are made part of record." Held, that this statement did not make the affidavit and bond a part of the record, and that to make them so, by means of a bill of exceptions, they should be copied into it." *Huff* v. *Gilbert*, 4 Blackf. 20.

" It is said that there was a motion to quash the writ in this case, and that the motion was improperly overruled. But as the writ is not invested in the record, we have no means of examining the objection, and must presume the decision of the court to be correct." *State Bank* v. *Brooks*, 4 Blackf. 485.

" The reasons filed by a party, as the foundation for a motion in the circuit court, do not thereby become a part of the record. To make them so, they must be embodied in a bill of exceptions." *Van Landingham* v. *Fellows*, 1 Scam. 233.

But suppose the question on the first assignment of errors before the court, and the affidavits, writs, &c., all properly under consideration, the decision of the court below is correct. It appears that an affidavit was made by one of the plaintiffs in due form of law, before one Hamilton, a clerk of the circuit of Steuben county, New York. It appears also by affidavits on file, which were before the court below without objection, that the said Hamilton was clerk of said court, that he was authorized to administer oaths whenever they were required or authorized by law, (and such is the law of New York, 2 Revised Laws New York, 213, which was also before the court,) and that the handwriting of Hamilton signed to the affidavit, is his proper handwriting.

The objection in this case was too late, bail had been given and accepted. " If the defendant has taken any steps admitting that he was bound to submit to its operation, it will be too late to object. Therefore it is too late to object on summons, or motion to such affidavit, after the defendant has put in bail," &c. 1 Chitty's Genl. Pr. 516, also 340 ; also to the same effect, 1 Dunlap's Practice, 108 ; 1 Term, 375 ; 1 East. 330.

The authorities are however conclusive, that this affidavit is sufficient.

In the case of *S. J. Walroud* v. *Jacob Senior and Van More*, 8 Modern R. 323 ; " The court held, that a plaintiff who was in Holland might make an affidavit there, and get it attested by a notary,. and that it . should be admitted as evidence to hold the defendant to special bail here."

In *Onecaly* v. *Newell*, 8 East. 370, the question is fully investigated, and it was there, after examining all the cases, decided that " an affidavit of debt made by the plaintiff residing in a foreign country before a foreign magistrate, whose signature to the jurat, and his authority in that country to administer oaths and take affidavits, where verified by proper affidavit, is a sufficient foundation for a judge's order, to hold the defendant to special bail."

But it is said our statute intended to require the affidavit to be made here. It is difficult to discover any such intention, and if we look to the object of the statute, we would suppose they intended otherwise. Again, our sister states are not foreign states ; they are confederacies ; just as much so, for the purposes of justice, as England and Scotland, or Ireland, and the practice of using affidavits in England made in Scotland or Ireland, has never even been questioned. See 8 East. 310, et seq.

The plaintiffs in error might just as well say, that the statute intended that no non-resident creditor should collect the debts of his runaway debtor, unless he would travel two thousand miles to make an affidavit to catch him.

The third error assigned is, that the court erred in sustaining a demurrer to the plea of no corporation, filed by the plaintiffs in error.

The court will bear in mind, that this action is debt on a record judgment rendered in the state of New York, and no plea could be filed to the action here which could not be filed in New York.

We assert, that a plea of no corporation is not a good plea in any case, it being tantamount to the general issue, and it

has been so decided in 19 Johnson; no precedent for such a plea in any case has been found for the last three hundred years.

In the *Bank of Auburn* v. *Weed*, 19 Johnson, 300, in which a plea of no corporation was filed, " This is the test, whether a plea in bar is bad as amounting to the general issue; any matter of defence, which denies what the plaintiff on general issue would be bound to prove, may, and ought to be given in evidence under the general issue, and a plea, setting up negatively such facts, is bad on special demurrer. 1 Chitty's P. 497; 1 Tidd's Pr. 599–600.

" It has been decided, 8 Johnson R. 378; 14 Johnson, 244; Hobart, 211, 212, and Lord Raymond, 15–25, that the plaintiffs are bound to prove, as part of their title, that they are an incorporation. Though there are precedents of the plea of no corporation, yet it is opposed to the principles of good pleading in modern times, and ought not to be allowed," and judgment was rendered for plaintiffs.

But whatever may be the general rule as to such a plea, in this case, past question, it is not allowable; the defendants below suffered a judgment to be rendered against them, thereby creating the highest species of contract, and where the defendants have contracted with the plaintiff as a corporation, they are estopped from denying the existence of the corporation.

" Where an action is brought on a judgment of another state, no plea will be good, except such as would be allowed in the courts of that state." 1 Story's Pleading, 337; 9 Mass. 464; 15 Johnson, 121; 1 Dallas, 261.

" A man may be estopped by his own pleading, or by an admission or confession on record, or by not denying a matter alleged on record." Story's Pleading, 44; 1 Salkeld, 8, 3, 276; 2 New H. 450; 4 Mass. 443; 2 Saunders, 3, note 2.

" Where the matter of estoppel appears on record in the same action, advantage may be taken of it on general demurrer; but if it do not so appear, it must be pleaded." Story's Pleading, 47; 11 Coke, 52, and Hob. 206, 207; 2

Lord Raymond, 1052, 1054, 1540; 2 Salkeld, 267; 1 Saunders, 325, n. 4; 2 Strange, 817; Barn. and Ald. 662; 3 East. 346.

It was admitted below, that the judgment on which suit was brought is the highest species of contract; if it is denied, I refer to 20 American Jurist, page 4.

In Angell on corporations, 581, it is said, "If a corporation sues on a contract, and it appear that the defendants entered into the contract with the plaintiffs, under their corporate name, it is an *admission which estops* the defendant from denying them to be a duly constituted body politic and corporate under such name." In this case Cooks have contracted with the defendants by a judgment under their corporate name.

It was laid down by counsel, and it appears to have been adopted by the court, that the plaintiffs in error were estopped by the recognizance they had entered into with the defendants in error, (the Dutch West India Company,) from saying there was no such company. *Henngins* v. *Dutch West India Compauy*, 1 Ld. Raymond, 1535.

This case was cited and relied on by Thompson C. J., in the state of New York, the decision in which case was, that those who subscribe for stock in an incorporated company, by signing an agreement by which they promise to pay the company a certain sum, set opposite their names, cannot object that the corporation is not duly constituted." *Dutchess Man. Com.* v. *Davis*, 14 John. 238.

In same case, Thompson says, "But the defendant having undertaken to enter into a contract with the plaintiffs, in their corporate name, he thereby admits them to be a duly constituted body, politic and corporate, under that name." Page 245.

In a very late case in New York, it was the opinion of the court, that the giving a note to a bank, on which note suit was brought, together with the admissions of the defendant, that he had been president of the bank, show that it had been actually in operation, doing business as a banking institu-

tion." *Bank Michigan* v. *Williams,* and causes there cited, 5 Wendell, 478.

No rule of law is better settled than the one, that an action of debt is attainable on a judgment of a court of record. Between the parties, the *judgment is the most conclusive* evidence of indebtedness. *Greathouse* v. *Smith,* 3 Scammon, 541.

These authorities show that the defendants are estopped from pleading no corporation, if it was a good plea, and that the estoppel appears of record, and is ground of demurrer to the plea. See also 3 Scam. R. 301.

But it was argued below, that the corporation may have suffered a civil death, after the rendition of the judgment in New York. I believe it is the doctrine of the defendants, that corporations never die; but if they do, I suppose the same rule applies to pleading their death, as that of an individual plaintiff; it is ground of *abatement,* not a bar to the action. Such is the authority in 1 Chitty's Pleadings, 21, 483:

" Pleas in abatement are divided into those relating to the disability of the person, &c.

" Pleas to the disability of the plaintiff show that he is incapable of commencing or continuing his suit, by denying his existence, &c." Chitty P. 482, 483.

It needs no argument to show, that the same rules apply to corporations as to private persons.

The fourth and last error assigned is, that the court erred in refusing to stay proceedings in the entire action, after the plaintiffs in error had sued out a writ of error to the decision of the court on the demurrer to the plea of no corporation.

How this court can know whether the court proceeded after the writ of error, I cannot tell. The writ of error commands the clerk to certify what has taken place before the granting of the writ, not what takes place afterwards.

I suppose, if there is anything wrong about the matter, a prohibition is the proper remedy, not a writ of error.

The first section of act 1843, page 6, gives the supreme

court appellate jurisdiction over all final and interlocutory decrees, orders, judgments, &c., of the district court.

The 16th section, page 7, says, "No writ of error shall stay or supersede the execution upon any judgment of the district court, unless the party applying, &c."

Of course it is not contended that we have issued or intend to issue an execution on the judgment rendered on the demurrer; and the writ of error stays nothing but the *execution* on the *judgment* complained of.

It is a good rule to construe statutes according to the objects of the makers, in remedying a particular evil. Before this law no writ of error was allowed to an interlocutory judgment: that was the evil to be remedied: but could it be designed thereby to inflict a greater evil on the adverse party? The argument from inconvenience shows its utter absurdity. If the rule prevails for which our opponents contend, I could keep a man out of a promissory note twenty years. I would make six different motions about the process,—not served, no seal, wrong test, not served in time, nor by proper officer, &c. &c.,—and each one of these would take a year. Then I would keep it off ten years longer by various pleas, motions, demurrers, affidavits to continue, applications for new trials, and then four more in arrests of judgment, applications for setting aside writs of *fi. fa.*, and finally wind up by an injunction in equity, and keep a man out of it forever.

This last ground is abandoned, the court below having stayed all proceedings in the case.

*Opinion by* HASTINGS, C. J. No assignment of error can be found among the papers in this case, yet from the argument of counsel it appears an assignment existed at the time of filing the written arguments. The first question, is a motion to set aside a bail bond, a part of the record? If so, we can inspect the sufficiency of the affidavit to hold to bail, and also of the writ. This question has been settled repeatedly in this court, following the decisions of the late

territorial supreme court, which seems to have adopted the Indiana and Illinois practice, that a motion, and the reason in support of the same are no part of the record in a case unless made so by bill of exceptions. Inasmuch as this is the established doctrine of this court, we are not now disposed to reverse it, being supported by the numerous authorities referred to by the defendants' attorney. We see nothing in argument that will justify us in reversing this case because the court below rejected the plea in abatement. The party did not except to the ruling of the court in rejecting this plea, by embodying the reason of the court in a bill of exceptions, nor is it at all clear that such a plea should be entertained; and inasmuch as the defendants below filed a plea of *nul tiel corporation,* and seemed to rest their defence upon that plea, it will be presumed the plea in abatement was waived, or that the objections to the ruling of the court in rejecting the plea were abandoned by the party's subsequent pleading.

We think the numerous references made by defendants' attorney in support of the demurrer to the plea of no corporation, clearly show that such a plea should be in substance a plea in abatement. The matter alleged goes to the disability of the plaintiffs below, viz. that there is no such corporation. The plea filed sets forth that there was then no such being as the plaintiff in existence. The judgment rendered in New York is conclusive as to the fact of the existence of the corporation at the time of its rendition. If then the corporation has since ceased to exist from any cause whatever, its dissolution should be taken advantage of only in the same manner as the death of a natural person.

The judgment of the court below is affirmed.